IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| AUSTEN LACKEY, | § § | |
| *Plaintiff,* | § § § | SA-17-CV-00514-FB |
| vs. | § § § | |
| AUSTIN DEMENT, CRST EXPEDITED, INC., | § § § § | |
| *Defendants.* | § § | |

# ORDER

Before the Court in the above-styled cause of action are Non-Party AD Hospital East, LLC's Motion to Quash and Motion for Protection [#73] and Defendants' Motion to Enforce Order on Defendants' Motion to Exclude or Limit Testimony of Dr. Henry Small [#78]. In reviewing the motions, the Court has also considered Defendants' Response to AD Hospital East, LLC's Motion to Quash and Motion for Protection [#75], Plaintiff's Combined Response to Defendants' Motion to Enforce Order on Defendants' Motion to Exclude or Limit Testimony of Dr. Henry Small and Motion to Clarify Pursuant to Fed. R. Civ. P. 60(a) [#83], Defendants' Response to Motion to Clarify Pursuant to Fed. R. Civ. P. 60(a) [#84], the Joint Advisory Regarding Non-Party AD Hospital East, LLC's Motion to Quash and Motion for Protection [#86], and Defendants' Position Statement Regarding Defendants' Motion to Enforce Order and Plaintiff's Motion to Clarify [#87]. The Court held a hearing on the motions on June 20, 2019, at which Plaintiff, Defendants, and Non-Party AD Hospital East, LLC ("ADHE") were present through counsel. After the hearing, Defendants and ADHE each filed a Supplemental Brief [#91, #92]. The Court also reviewed these filings in evaluating ADHE's motion.

1

After considering the motions, responses, and replies, the relevant portions of the record in this case, the governing law, and the arguments of counsel at the hearing, the Court orally granted Defendants' Motion to Enforce Order, which asked the Court to issue an order compelling Plaintiff to pay all fees associated with the reopening of Dr. Small's deposition. The Court took ADHE's motion to quash under advisement. The Court now memorializes its oral ruling with respect to Defendants' motion and issues a substantive order granting ADHE's motion to quash.

This case was referred to the undersigned for all pretrial proceedings pursuant to Rules CV-72 and 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. The Court has authority to issue this Order pursuant to 28 U.S.C. § 636(b)(1)(A).

## I. Background

This personal-injury action arises out of a motor-vehicle collision between a vehicle operated by Plaintiff Austin Lackey and a semi-trailer truck operated by Defendant Austin Dement and owned by Defendant CRST Expedited, Inc. Plaintiff originally filed this action in state court, and Defendants removed the Original Petition based on diversity jurisdiction. The Original Petition remains the live pleading before the Court [#1-1] and alleges various theories of negligence under Texas law against Defendants.

In January 2019, Plaintiff served affidavits concerning medical billing in his supplemental discovery responses, which included a billing-records affidavit from Tarik Tewary, custodian of records for ADHE [#50-2]. Defendants subsequently served deposition notices for both Tewary and ADHE's records custodian [#48-1, #48-2]. Plaintiff moved to quash the notices [#48], and the Court granted the motion in part, allowing Defendants to depose ADHE's

records custodian in addition to Plaintiff's previously noticed Rule 30(b)(6) corporate representative deposition [#52].

Defendants subsequently served their cross-notice of intention to take the oral and videotaped deposition of the corporation representative for ADHE. The cross-notice lists the following as one of the deposition topics:

> 3. Reimbursement rates for Medicare, Medicaid, Blue Cross Blue Shield, Cigna PPO, MultiPlan, United Healthcare, Aetna, Humana Healthcare Molina Obama Healthcare for services this healthcare provider performed, or products this health care provider provided, to Austen Lackey from March 29, 2012 to the present, regardless of whether any such reimbursement rates would have applied to the charges for or products and services provided to Austen Lackey.

(Cross-Notice [#73-1] at 8.)  Defendants' cross-notice further demands that ADHE produce the following records at the deposition:

> 2. Any and all records . . . concerning, but not limited to reimbursement rates for Medicare, Medicaid, Blue Cross Blue Shield, Cigna PPO, MultiPlan, United Healthcare, Aetna, Humana Healthcare Molina Obama Healthcare, services this healthcare provider performed, regardless of whether any such reimbursement rates would have applied to the charges for or products and services provided to Austen Lackey, DOB: January 25, 1996, SSN: XXX-XX-1109;

(Subpoena Duces Tecum [#73-1] at 11.)

ADHE now moves to quash Topic 3 and Document Request 2 on the basis that ADHE's reimbursement rates are confidential, privileged trade secrets that ADHE is contractually prohibited from providing to third parties. ADHE also asks the Court to enter an order protecting ADHE from discovery of the same.[1] At the hearing, Defendants orally revised their request as to the reimbursement rates, limiting the discovery sought to the reimbursement rates

---

[1] ADHE's motion originally challenged other designated topics and production requests contained in Defendants' cross-notice, but the parties resolved these additional disputes prior to the Court's June 20, 2019 hearing. (*See* Joint Advisory [#86].)

for the specific procedure codes applicable to the services provided to Plaintiff. ADHE maintains its objection to this discovery. For the reasons that follow, the Court will grant ADHE's motion and quash Topic 3 and Document Request 2, as written in Defendants' cross-notice or as modified by Defendants at the hearing.

## II.  Analysis

ADHE moves to quash Defendants' cross-notice of the deposition of ADHE's corporate representative with respect to its request for testimony and documentation of the reimbursement rates that have been contractually negotiated between ADHE and various insurers. It is undisputed that Plaintiff is not insured by any insurance company and these rates do not govern the services ADHE provided to Plaintiff. The motion is granted.

Rule 26 generally limits discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). ADHE brings its motion to quash pursuant to Rule 45, which governs subpoenas served on nonparties. Courts apply the same relevance and proportionality limitations encompassed by Rule 26 to motions to quash in the context of Rule 45 so as to avoid imposing any undue burden or expense on the person or entity subject to the subpoena. *See, e.g.*, *MetroPCS v. Thomas*, No. 3:18-MC-29-K-BN, 2018 WL 2933673, at *9 (N.D. Tex. June 12, 2018); *Whitley v. Pinnacle Entm't, Inc.*, No. CV 15-595-BAJ-RLB, 2016 WL 6154938, at *2 (M.D. La. Oct. 21, 2016).

The parties' dispute centers on the interpretation and application of a recent case issued by the Texas Supreme Court, which held that a trial court did not abuse its discretion by permitting discovery of the reimbursement rates of insurers and government payors in a dispute regarding the enforceability of a hospital lien against an uninsured patient. *See In re N. Cypress Med. Ctr. Operating Co., Ltd.*, 559 S.W.3d 128, 137 (Tex. 2018). ADHE contends that *North*

*Cypress* does not apply in the context of a personal-injury action and with respect to discovery sought from non-parties, as here, and that its reimbursement rates are confidential trade secrets that it cannot be compelled to produce. Defendants argue that *North Cypress* applies to this case, the discovery should be permitted, and a standard confidentiality and protective order could be issued to protect any proprietary information.

The Court agrees with ADHE that *North Cypress* does not govern the discovery issue before the Court and the information sought is neither relevant nor proportional to the needs of the case. Moreover, even if Defendants could establish relevance and proportionality as to the disputed discovery, ADHE has established that the reimbursement rates are trade secrets and should not be disclosed and Defendants have failed to satisfy their burden to demonstrate that the discovery of the reimbursement rates are nonetheless necessary to the fair adjudication of this case.

**A.**     ***North Cypress* is not controlling in this context—a personal-injury diversity action in federal court.**

Defendants have not convinced the Court that the Texas Supreme Court's *North Cypress* holding should affect the Court's relevance and proportionality analysis in the discovery dispute before the Court. The *North Cypress* case involved a dispute in a Texas court between an uninsured patient and a hospital over the reasonableness of a hospital lien following emergency-room treatment. 559 S.W.3d at 129–130. The patient sued the hospital in a declaratory judgment action, arguing that the hospital's charges were unreasonable and the lien was invalid to the extent it exceeded a "reasonable and regular rate" for the services rendered. *Id.* The Texas Supreme Court held that the amounts the hospital accepts for the services rendered to the plaintiff from other patients who received the same services—including amounts charged to

patients covered by private insurance and government benefits—were relevant to the reasonableness of the challenged hospital lien and therefore discoverable. *Id.* at 134–37.

The *North Cypress* court's reasonableness analysis centered on Texas's hospital-lien statute, which provides hospitals with "an additional method of securing payment from accident victims, encouraging their prompt and adequate treatment." *Id.* at 131; *see also* Tex. Prop. Code § 55.001, *et seq.* The statute contains language that a hospital is to recover the full amount of its lien, subject only to the right to question "the reasonableness of the charges comprising the lien." *N. Cypress*, 559 S.W.3d at 131 (quoting *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 309 (Tex. 1985)); *see also Daughters of Charity Health Servs. v. Linnstaedter*, 226 S.W.3d 409, 411 (Tex. 2007) (noting that the amount of a hospital lien may not exceed "a reasonable and regular rate").

Based on the language of Texas's hospital-lien statute, the Court determined that the "central issue in a case challenging such a lien is what a reasonable and regular rate would be." *N. Cypress*, 559 S.W.3d at 133. The Court reasoned that the amount actually charged to a patient, whether insured or insured, is not dispositive of what constitutes a reasonable rate for purposes of enforcement of a hospital lien. *Id.* Ultimately, the Court held that here is a "potential connection between reimbursement rates and the reasonableness of billed charges," despite the many factors that affect the negotiated rate with a particular insurer. *Id.* at 135.

Defendants ask this Court to extend *North Cypress* to the context of personal-injury litigation and therefore to find that the contractual reimbursement rates between an insurer and a medical provider are relevant and proportional as to an uninsured plaintiff's damages claim for

past medical expenses. No Texas court has yet extended *North Cypress* to this situation.[2] In support of its argument, Defendants direct the Court to a decision by a federal court from this district, however, which permitted similar discovery in the personal-injury context. *See Eyer v. Rivera*, No. SA-17-CV-01212-OLG, 2019 WL 626140, at *1 (W.D. Tex. Jan. 7, 2019) (granting motion to compel answer to deposition by written questions and production of document with respect to reimbursement rates for various services performed). *See also Ochoa v. Mercer Transp. Co.*, No. 5:17-CV-1005-OLG, 2018 WL 6220155, at *1–2 (W.D. Tex. June 8, 2018) (denying motion to quash with respect to reimbursement rates from private insurers).

In applying the reasoning of *North Cypress* to the personal-injury context, these cases both relied on the requirement in Texas law that a claim for past medical expenses be supported by evidence that such expenses were reasonable and necessary. *See Hamburger v. State Farm*

---

[2] At the Court's hearing, Defendants represented to the Court that a Texas intermediate court of appeals had extended *North Cypress* to the personal-injury context and would submit the case to the Court for its consideration. Defendants' supplemental brief cites to a case from the Houston Court of Appeals, in which the court reversed a trial court's judgment on past medical expenses in a personal-injury action due to the improper exclusion of a portion of the deposition testimony of the former director of the business office of the medical provider at issue. *See Primoris Energy Servs. Corp. v. Myers*, 569 S.W.3d 745, 763–64 (Tex. App.—Houston [1st Dist.] 2018, no pet.). *Primoris Energy* did not concern a discovery dispute over an attempt to obtain insurance contracts and reimbursement rates, did not implicate the *North Cypress* decision, and involves unique facts not applicable here. The evidence at trial in *Primoris Energy* established that the plaintiff's bill for $200,000 of medical services had been assigned to MedFin, a third-party "factoring" company that purchases the right to collect money before the bill is paid, thereby reducing the delay between the time of sale and the receipt of payment. *Id.* at 763. The excluded deposition testimony would have established that the hospital had negotiated the acceptance of only $80,000 for plaintiff's bill in exchange for the assignment of the bill to MedFin and had a regular practice of marking up bills by 400% and accepting only 25-40% of the amount charged. *Id.* at 763–64. The appellate court therefore held that the jury should have been permitted to consider this testimony in evaluating the reasonableness of the plaintiff's claimed medical expenses. *Id.* Accordingly, MedFin, though not an insurer, functioned somewhat like one in that it provided payment to the hospital for the specific bill at issue. There is no evidence of any relationship with an insurer or a third-party factoring company like MedFin in this case.

*Mut. Auto. Ins. Co.*, 361 F.3d 875, 886 (5th Cir. 2004) (collecting Texas cases on reasonableness requirement for recovering past medical expenses).  A plaintiff must prove reasonableness and necessity by expert testimony or affidavit; proffering a medical bill as evidence of damages is not enough.  *Hong v. Bennett*, 209 S.W.3d 795, 801 (Tex. App.—Fort Worth 2006, no pet.); *Cowboys Concert Hall-Arlington, Inc. v. Jones*, No. 02-12-00518-CV, 2014 WL 1713472, at *18 (Tex. App.—Fort Worth May 1, 2014, no pet.); *see also* Tex. Civ. Prac. & Rem. Code § 18.001.  In light of this requirement, the court in *Ochoa* concluded that the reimbursement rates at issue could lead to the discovery of evidence regarding charges paid by other patients for services provided to plaintiff—evidence that would be admissible to show the reasonableness of the health care expenses that the plaintiff paid.  2018 WL 6220155, at *1.[3]

This Court is not persuaded that the Texas Supreme Court would conclude the same, nor that this is the correct result under Fifth Circuit law as to the relevance and proportionality of the discovery.  Texas tort law limits the recovery of medical or health care expenses "to the amount actually paid or incurred by or on behalf of the claimant."  Tex. Civ. Prac. & Rem. Code § 41.0105.  Moreover, Texas's collateral-source rule, which is a rule of both evidence and damages, bars a wrongdoer from offsetting his liability by benefits received by the plaintiff from a third party.  *Mid-Century Ins. Co. of Texas v. Kidd*, 997 S.W.2d 265, 274 n.48 (Tex. 1999).  Accordingly, in the context of an uninsured patient, the Fifth Circuit (interpreting Texas law) has stated that the reduced prices that an uninsured plaintiff "may have received had he participated in health benefits or insurance programs for which he may have been eligible are irrelevant."  *Guzman v. Jones*, 804 F.3d 707, 712–13 (5th Cir. 2015).  Stated another way, the bill received by

---

[3] Importantly, the motion to compel that was filed in *Eyer* was unopposed and therefore there was no argument developed before the Court regarding the status of the requested reimbursement rates as trade secrets, as ADHE argues here.  The motion to quash field in *Ocho* also did not raise the trade-secret argument at the center of ADHE's motion.

an uninsured patient is the primary evidence of the amount of past medical damages "because [the patient] received the medical care, was billed for it, has provided no payments to cover it, and could be subject to suit for non-payment in the full amount billed." *Id.* at 711.  "The amount [a patient] might have owed under different circumstances has no bearing on what [the patient] actually owes now." *Id.* at 711–12.  This reasoning applies with equal force here.  What Plaintiff's medical provider charges insured patients for the procedures Plaintiff received "has no bearing" on what Plaintiff owes to his medical provider.  As that information is not relevant, the tortfeasor defendant should not be allowed to discover it from Plaintiff's non-party medical providers.

**B.     The requested discovery is not proportional to the needs of this case.**

Moreover, even if this information does have some attenuated relevance, permitting its discovery is not proportional to the needs of the case under these circumstances.  It is significant that the discovery in *North Cypress* was sought from the hospital, who was the defendant in the litigation, for the purposes of determining the dispositive legal question in the case—whether the hospital could enforce a lien against the plaintiff patient for services provided.  Essential to that inquiry was a statutorily mandated evaluation of the reasonableness of the amount of the hospital chose to bill the uninsured patient.  The hospital, which had negotiated the reimbursement rates, bore the burden of proving the reasonableness of the lien at issue.  (Notably, the discovery inquiry in *North Cypress* was also governed by the Texas Rules of Civil Procedure, not the Federal Rules of Civil Procedure, which require proportionality and not merely a demonstration the information sought in discovery is relevant to the subject matter of the pending action and if not itself admissible at least reasonably calculated to lead to the discovery of admissible evidence.  *See* Tex. R. Civ. P. 192.3(a).)

In contrast, the discovery sought here is from a non-party medical provider—ADHE—for the purpose of challenging the uninsured Plaintiff's claimed damages in the form of past medical expenses and potentially reducing the liability of Defendants—the alleged tortfeasors. The Plaintiff bears the burden of proving the reasonableness of his past medical expenses. Defendants seek information from a non-party for purposes of cross examination. In this context, the Court is not convinced that the requested discovery is proportional to the needs of this case. It places a burden on the third party to provide information that only tangentially relates to an issue in the case.

**C.    ADHE has established that its reimbursement rates are trade secrets, which are therefore protected from discovery in this case.**

Finally, even if Defendants could demonstrate that the reimbursement rates are relevant to Plaintiffs' claims and proportional to the needs of this case, the Court would still decline to permit the requested discovery because ADHE has sufficiently established that the reimbursement rates are trade secrets protected from discovery under Texas law. ADHE argues that the requested reimbursement rates are confidential trade secrets in the form of ADHE's billing practices and pricing arrangements and payment terms with insurance companies and others.

The Texas Uniform Trade Secrets Act ("TUTSA") requires that courts preserve the secrecy of an alleged trade secret by reasonable means. Tex. Civ. Prac. & Rem. Code § 134A.006. A trade secret . . .

> means all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if:

>(A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and
>
>(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

Tex. Civ. Prac. & Rem. Code § 134A.002(6).  When trade secret privilege is asserted as the basis for resisting production, "the party resisting discovery must establish that the information sought is indeed a trade secret and that disclosure would be harmful." *In re Continental General Tire, Inc.*, 979 S.W.2d 609, 612 (Tex. 1998).  The burden then shifts to the requesting party to establish that the information is relevant and necessary for a fair adjudication of the party's claims or defenses.  *Id.* at 612–13.  "If the trial court orders disclosure, it should enter an appropriate protective order." *Id.* at 612.

To determine whether a trade secret exists, the Texas Supreme Court applies the Restatement of Torts' six-factor test:

>(1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of the measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003).  A party claiming a trade secret is not required to satisfy all six factors but instead courts must weigh all six factors, as well as any other relevant factor, in the context of the surrounding circumstances to determine whether the information at issue constitutes a trade secret.  *Id.* at 740.  Although this Texas Supreme Court decision pre-dates TUTSA, the case's trade secret analysis is not inconsistent with the TUTSA definition, and there is nothing else in TUTSA that is in tension with the applicable reasoning of *Bass*.

ADHE has submitted to the Court the sworn declaration of Christopher Harkey, in-house counsel for ADHE, which states that the requested reimbursement rates are trade secrets in the form of ADHE's billing practices, payment arrangements, and payment terms with insurance companies and others.  (Harkey Decl. [#73-1] at 16, ¶ 8.)  Harkey represents to the Court that ADHE takes measures to keep its reimbursement rates secret; does not make the rates generally available even to its employees; and discloses the information only to a select few employees who are instructed to keep the information confidential.  (*Id.* at 16, ¶ 9.)  Additionally, the insurance-provider contracts containing the rates contain confidentiality provisions that obligate ADHE and the insurance company to keep the terms confidential.  (*Id.* at 17, ¶ 10; *see also, e.g.*, Hospital Services Agreement [#73-1] at 21–28.)  According to Harkey, this proprietary pricing information "derives independent economic benefit from not being generally known to, and not being readily ascertainable" to others and the disclosure thereof could result in a significant competitive disadvantage when negotiating future contracts.  (*Id.* at 17–18, ¶ 11.)

Defendants do not respond to ADHE's trade-secret argument or present the Court with any counter-evidence to Harkey's declaration.  The Court therefore finds that ADHE's negotiated reimbursement rates are trade secrets because Harkey's declaration establishes that the rates are not known outside of their business or by the majority of employees; the rates are contractually protected from disclosure; and the rates are of great value both to ADHE and competing insurers and health care providers.  *See* Tex. Civ. Prac. & Rem. Code § 134A.002(6); *In re Bass*, 113 S.W.3d at 739.  Accordingly, Defendants bear the burden to show the necessity of the requested materials.  *In re Continental*, 979 S.W.2d at 612.  Defendants have failed to do so.

For trade secret discovery to be "necessary for a fair adjudication" of a claim, the production must be "material and necessary to the litigation." *Id.* at 615. If Defendants need to determine the reasonableness of Plaintiff's medical expenses, there are other means of evaluating and comparing the actual and billed prices for various procedures, as the averages of this information is made publicly available by the Texas Department of Insurance. (Harkey Decl. [#73-1] at 19, ¶ 14; *see also* Texas Healthcare Costs, available at www.texashealthcarecosts.org (last visited June 26, 2019).) Additionally, the Medicare and Medicaid reimbursement rates sought by Defendants are publicly available.

Finally, Defendants' agreement to a protective order as a means of protecting against the disclosure of ADHE's trade secrets "does not dispense with the requesting party's burden to establish the necessity for the discovery of the trade secret information to fairly adjudicate a claim or defense." *In re Hewlett Packard*, 212 S.W.3d 356, 364 (Tex. App.—Austin 2006, no pet.) Because Defendants have not established the necessity of discovering ADHE's trade secrets—the contractually negotiated insurance rates with various insurers—in order to fairly adjudicate a claim or defense in this case, Defendants are not entitled to discover the information regardless of whether a protective order is entered by the court. *See id.*

**IT IS THEREFORE ORDERED** that Non-Party AD Hospital East, LLC's Motion to Quash and Motion for Protection [#73] is **GRANTED** as to Topic 3 and Document Request 2 in Defendants' cross notice of ADHE's corporate representative deposition. ADHE's corporate representative is not required to testify on the requested reimbursement rates nor is ADHE required to produce documents containing same.

**IT IS FURTHER ORDERED** that Defendants' Motion to Enforce Order on Defendants' Motion to Exclude or Limit Testimony of Dr. Henry Small [#78] is **GRANTED** as follows:

Defendants are ordered to re-notice the deposition of Dr. Small with a time limit of two hours. Any fee charged by Dr. Small for the deposition is to be borne by Plaintiff. However, if the fee is exorbitant and Dr. Small refuses to appear but for payment, Dr. Small must file a motion to quash the deposition notice and identify the basis for his refusal to comply with a subpoena to appear for a deposition as a non-retained expert witness.

**IT IS FINALLY ORDERED** that in all other respects the motions are **DENIED**.

SIGNED this 18th day of July, 2019.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE